UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-MC-23973-KING/GOODMAN

IN RE: APPLICATION OF
Dr. Afonso Henrique Alves Braga
in his capacity as Judicial Administrator of
Petroforte Brasileiro de Petroleo Ltda. and others
pursuant to 28 U.S.C. § 1782
For Judicial Assistance in Obtaining
Evidence Located in the Southern District of Florida.
_____/

**AMENDED (CLARIFIED) ORDER GRANTING IN PART AND DENYING**

**IN PART INTERVENORS' MOTIONS TO STAY DISCOVERY**

**PENDING RESOLUTION OF FOREIGN PROCEEDINGS[1]**

This matter is before the Court on Intervenor, Rural International Bank Ltd.'s ("Rural

Bahamas") Motion to Intervene and Stay Discovery (DE# 15) (the "Motion"), filed on December

7, 2010.[2] The Court has reviewed the Motion, the Applicant's response, the pertinent portions of

the record, the applicable law and heard the argument of counsel on February 17, 2011. Based on

this, the Court hereby ORDERS and ADJUDGES that the portion of Rural Bahamas' Motion

---

[1]    *See* Order Clarifying This Court's Prior Order Granting in Part and Denying in Part
Intervenors' Motions to Stay Discovery Pending Resolution of Foreign Proceedings (DE# 130)
for an explanation of which portions of this order have been amended.

[2]    Rural Bahamas' Motion was granted, in part, on February 17, 2011. (DE# 80.) The
Court granted Rural Bahamas' motion to intervene in this proceeding for itself only and reserved
ruling on the portion of Rural Bahamas' Motion requesting a stay of discovery. In the same
order, the Court granted leave for any related entities or individuals identified in Rural Bahamas'
Motion to intervene in this proceeding through the filing of a separate motion to intervene or
through the filing of a notice of joinder in Rural Bahamas' Motion. To the extent that any
additional entity or individual has since moved to intervene and their motion was granted,
thereby joining that entity or individual in this Motion, this Order also resolves their joinder in
this Motion. (DE# 85; DE# 86; DE# 87; DE# 88; DE# 103; DE# 104.) The Court will refer to
Rural International (a/k/a Rural Bahamas) and the additional parties who have been granted
leave to intervene, collectively, as the "Intervenors."

(DE# 15) not previously ruled on -- the portion requesting a stay of discovery in this proceeding pending resolution of proceedings in Brazil and the Cayman Islands -- is **GRANTED IN PART AND DENIED IN PART**.

As outlined below, the stay is temporary and relates only to certain discovery. Other discovery -- i.e., not relating to Securinvest (and its affiliates and related parties) and not at issue in the Cayman Islands proceedings – may continue. In addition, the limited stay will expire on its own terms on June 30, 2011 unless the parties earlier and successfully move, consistent with this Order, to lift or modify the stay.

## I.     GENERAL INTRODUCTION AND FRAMING OF THE ISSUES

The parties have submitted a *massive* amount of paperwork to the Court in the past three months. Virtually every issue is contested. Virtually every contest results in a flurry of motions and memoranda, typically using the maximum number of permissible pages and attaching dozens of pages of exhibits. An example of this energetic (to use a diplomatic, benign term) litigation is provided at a later point in this Order, on pages 3 - 6, before the analysis.

Notwithstanding the volume of motions, memoranda and exhibits, this case concerns only a *discovery* dispute. The parties are not asserting claims against each other in this Court. The proceeding pending in this district is limited and relates only to judicial assistance – authorizing discovery – concerning a large-scale Brazilian bankruptcy (and to an ongoing investigation being conducted by the Judicial Administrator of the [Brazilian] Bankruptcy Estate, Dr. Alfonso Henrique Alves Braga). (*See generally* DE# 1.) As part of his investigation, Dr. Braga obtained an order from this Court permitting him to obtain discovery, pursuant to 28 U.S.C. § 1782. Based on that order, Dr. Braga served several subpoenas for documents and

testimony.  Some of the parties on the receiving end of these subpoenas have at this point complied, but many others have sought to prevent or limit the discovery.

One entity objecting to this discovery is Rural Bahamas.  Rural Bahamas contends that Dr. Braga is improperly using 28 U.S.C. § 1782 to seek irrelevant information designed to support an already disproven theory. (DE# 33, pp. 4-5).  Rural Bahamas argues that Dr. Braga's actual agenda is to seek U.S. judicial assistance to improperly obtain confidential business and financial information concerning the Intervenors' activities outside of Brazil.  Dr's Braga's allegedly wants to use this information to threaten and pressure the Intervenors into paying debts of the Brazilian bankruptcy debtor, despite their lack of financial responsibility under Brazilian bankruptcy law.  (DE# 15.)

Rural Bahamas continues that the discovery "will permit Braga's counsel to intrude far into areas which cannot possibly be relevant to the ongoing Brazilian bankruptcy proceeding to which the discovery in this district purportedly pertains."  (DE# 27-1, p. 2.)  Likewise, it argues that Dr. Braga is seeking "wide-ranging and intrusive discovery" on a "question that does not exist." (DE# 27-1, p. 3). Rural Bahamas believes Dr. Braga "lack[s] the authority" to pursue the discovery here.  (DE# 27-1, p.13).   In sum, it describes Dr. Braga's application to this Court as a "contrived one designed to secure information not relevant to the Brazilian proceeding as part of an unauthorized campaign against the Rural Group and its owners and Secureinvest." (DE# 27-1, p. 20).

Rural Bahamas also contends that Dr. Braga acted improperly when he obtained two *ex parte* orders in the Cayman Islands under British legal doctrines which authorize the release of information on a corporation's shareholders (i.e., Securinvest's shareholders) which would otherwise be confidential under Caymanian law.  It has challenged those orders in the Cayman

Islands and its counsel are seeking directions from the Grand Court of the Cayman Islands about whether releasing the information requested by Dr. Braga in the subpoenas will violate Caymanian secrecy/confidentiality laws.[3]

Rural Bahamas has not, however, interposed any motions, objections or other challenges to the discovery sought here in the United States with the Brazilian bankruptcy court or the Brazilian appellate courts.

### Nothing is Easy in This Case --  A Classic Example

As noted, the parties appear to disagree about every conceivable issue and they then litigate every disagreement by submitting reams of legal argument and leaving no issue untouched by their "cover-every-conceivable-base" approach. The parties' conduct in response to a brief series of comments at the hearing provides a classic example of how a discovery dispute (at its core) spins off myriad issues and litigation in this case.

At the hearing, counsel (for the Carlton Fields firm and Mr. Macaulay) advised the Court about a 2008 complaint filed against Judge Luiz Beethoven Giffoni Ferreira, the Brazilian bankruptcy judge who initially extended the Petroforte bankruptcy to Securinvest. Counsel explained that the complaint was filed by Securinvest and that it is still pending. (DE# 84, pp. 212 – 213).  Counsel offered to provide a copy of this 2008 complaint against Judge Beethoven. The Court permitted Counsel to file a copy of this 2008 complaint, with translation and supporting affidavit. *Id.*   Although the Court permitted this submission, it indicated that the complaint would not be deemed critical (i.e. "for what it's worth, and I will evaluate the weight of it," and "keeping in mind for what it's worth, if you and your team want to look into this and provide some additional light on it, feel free") (DE# 84, p. 218).

---

[3]      Rural's attorneys have also challenged subpoenas seeking information from implicating Rural on these grounds.

Nevertheless, buoyed by the Court's comment that a copy of the complaint against Judge Beethoven could be submitted "for what it's worth," *Rural Bahamas* (not the Carlton Fields firm or Mr. Macaulay) submitted a "Notice of Filing" (DE# 89), explaining that it was filing a copy of "*the* disciplinary complaint" against Judge Beethoven and that the filing was "authorized" by the Court. (italics added by the Court).[4]

This seemingly simple filing was hardly the end of the matter, though.

In response, Dr. Braga submitted his own notice of filing (DE# 95), in "partial response" to Rural's notice of filing. In this notice, Dr. Braga pointed out that the disciplinary complaint filed by Rural Bahamas was **not filed by Securinvest and was not filed in 2008**. Instead, the complaint was filed very recently, on February 24, 2011 (*after t*he hearing). Moreover, it was filed by Katia Rabello – an Intervenor from whom discovery is being sought in this matter.

Dr. Braga's notice also explained that the disciplinary complaint filed by Securinvest was "rejected" by the Sao Paolo Tribunal of Justice in September 2009, which concluded that Securinvest's allegations against Judge Beethoven were "devoid of any proof." He also advised this Court that the decision " is **final.**"

In response to Dr. Braga's Notice (itself designated as a "partial response"), several Intervenors, including Rural Bahamas, filed another document concerning the complaint filed against Judge Beethoven. Designated a "response," (DE# 105), this submission begins with the introduction that its purpose is to "dispel any impression that the disciplinary complaint" it filed "was the same complaint referred to at the February 17, 2011 hearing."

Of course, any impression which needed to be dispelled was created by Rural Bahamas itself, who submitted its earlier filing pursuant to a Court "authorization" relating to the 2008

---

[4]     The only complaint against Judge Beethoven which this Court authorized to be filed is the one filed by Securinvest in 2008.

complaint mentioned at the hearing and who failed to explain that it was not only submitting a different complaint but was submitting one filed *after* the hearing before this Court.

In this impression-dispelling response, Rural Bahamas, which itself described the earlier-filed complaint as a "disciplinary complaint," explained that the complaint it filed is, in fact, "not a disciplinary complaint" against Judge Beethoven, but, instead, is actually "the Brazilian equivalent of a motion to recuse him."  Moreover, this second filing by Rural Bahamas contends that the 2008 complaint (which it did not file with this Court because it says the complaint  "is subject to secrecy under Brazilian law") is still "presently pending."

Dr. Braga, of course, then filed his own "supplement" to Rural's "response" to his "partial response" to the initial "notice of filing." In this submission (DE# 108), Dr. Braga maintains his position that the 2008 complaint against Judge Beehoven was rejected.

All told, the parties submitted **133** pages of notices, memoranda, exhibits and translations in response to the Court's simple and succinct comment that a copy of the complaint could be filed "for what it is worth."  After reviewing all of this material, which likely cost the parties many thousands of dollars in attorney's fees and translation costs, the Court is still left with a dispute over the finality or pendency of the 2008 complaint and a post-hearing motion to recuse filed in Brazil by an interested party.

Given that interested parties unhappy over a judge's rulings are the ones who filed the 2008  grievance and the recent motion to recuse, the Court, as foreshadowed at the hearing, is not impressed with the significance of the Rural-filed exhibits.  Having been on the receiving end of

a frenetic, expensive and ultimately largely irrelevant series of filings, the Court is reminded of William Shakespeare's famous comedy, *Much Ado About Nothing.*"[5]

As evidenced by the example provided above, the parties stridently disagree about most issues and cannot even agree on issues which should not be in dispute, such as whether the 2008 complaint is still pending.

Thus, the motion for a stay and Dr. Braga's opposition to it would necessarily require this Court to delve into detailed and complicated issues of Brazilian bankruptcy and constitutional within the context of a foreign bankruptcy.  Moreover, the bankruptcy itself has several years' worth of opinions from Brazilian courts regarding issues that appear to be relevant to Dr. Braga's petition.  As if this inquiry were not already complex enough, both sides offer competent, persuasive evidence regarding Brazilian law on these issues.  Rural Bank appropriately sums up the situation in its proposed order: "the Court is confronted with widely different interpretations of the law of Brazil and of the Cayman Islands, with both sides' arguments supported by the affidavits and declarations, all facially credible, of noted practitioners and scholars."  (DE# 94-1, p. 3.)

Dr. Braga urges the Court to simply deny the motion for a stay.  Clearly, this position could lead to the production of privileged information or information arguably confidential or secret under Cayman Islands law if Dr. Braga's challenged position on the relevance of the discovery and the propriety of his Cayman Islands activities is rejected.  This would be a troubling result because once privileged or confidential information is disclosed, the protections otherwise afforded to it are, at a minimum, undermined.

---

[5]     For a variation on the theme, the filing-laden scenario outlined above can also be described as "a tempest in a teapot," an often-invoked metaphor meaning "a situation where people get very angry or worried about something that is not important." http://idioms.thefreedictionary.com (last visited Mar. 15, 2011).

On the other hand, Rural Bahamas cannot with certainty predict when the Brazilian appellate court will enter the ruling which it contends will determine the scope of Dr. Braga's discovery and the relevance of the information he seeks in the United States.  Likewise, Rural Bahamas is also unable to pinpoint when the Cayman Islands court or other authorities will rule on the challenge to Dr. Braga's use of the *ex parte* orders obtained under the so-called *Norwich Pharmacal* doctrine.[6]

Given this uncertainty, issuing a stay pending resolution of these foreign proceedings is akin to authorizing an open-ended stay of unknown duration.  That result would not make sense, either.

Not surprisingly, Dr. Braga contends that he (in his capacity as Judicial Administrator)[7] and the bankruptcy estate and its creditors would be harmed if a stay were to be entered.  He argues that a stay is risky because of the potential for asset flight and asset dissipation.  But Rural Bahamas, the Intervenors and other parties have known of Dr. Braga's discovery efforts in this country for several months.  To the extent that debtors of the bankruptcy estate or others financially responsible to Dr. Braga may hide or transfer assets, that risk arose months ago.  Dr. Braga has not explained why a modest discovery stay would generate any risk of capital flight beyond what may have already occurred.

After due consideration of the many competing interests and issues involved here - the **voluminous record**, this Court's relative unfamiliarity with the years' worth of developments in the underlying Brazilian bankruptcy proceedings, the unresolved Brazilian and Caymanian legal

---

[6]     At the hearing, Rural Bahamas' counsel suggested that the Caymanian decision could even possibly be appealed to another court in London, England.

[7]     At the hearing, Dr. Braga's counsel explained that a Judicial Administrator in a Brazilian bankruptcy proceeding is similar to a trustee in an American bankruptcy proceeding.

questions, the risk that discovery of privileged, confidential or personally private information might be improperly disclosed, the fact that presentation of legal issues concerning the relevancy and propriety of Dr. Braga's discovery efforts in the United States to courts and officials in Brazil and the Cayman Islands is already underway – the Court determines that that a limited stay of modest duration would best balance the parties' positions.

## II.   DETAILED FACTUAL BACKGROUND

### Dr. Braga's 28 U.S.C. § 1782 Application and Discovery to Date

Dr. Braga filed his Application for Expedited Judicial Assistance in this District for Use in Foreign Proceedings Pursuant to 28 U.S.C. §1782 on November 3, 2010.  (DE# 1.)  The Application requested, *inter alia*, permission to issue subpoenas to Carlton Fields, P.A., Robert B. Macaulay, Luisa Rosa de Oliveira Binder, Nelson Slosbergas, P.A., Nelson Slosbergas (collectively the "Discovery Respondents"),[8] and to AT&T New Cingular Wireless.  Dr. Braga sought, *inter alia*, documents pertaining to various Banco Rural, S.A.-related entities ("Banco Rural") and individuals including Securinvest Holdings, S.A. ("Securinvest") and Katia Rabello, (who is asserted to be the ultimate beneficial owner, in whole or in part, of both Banco Rural and Securinvest), all of whom are clients of Carlton Fields, P.A. and Mr. Macaulay.

Dr. Braga stated in the application that this discovery was for use in (a) a bankruptcy proceeding pending in Brazil, and (b) ongoing investigations with a view to the potential filing of additional proceedings in relation to a multi-jurisdictional fraud on the Petroforte estate.  Dr. Braga, as Judicial Administrator of the Petroforte estate, has the duty to try to recover up to US$1.16 billion to satisfy the debts of the estate.  (DE 30, p. 4.)

---

[8]    Dr. Braga also sought and obtained leave to serve a subpoena on AT&T-New Cingular Wireless ("AT&T") seeking phone records pertaining to Federico Jenkins.  (DE1; DE3).

All of the Discovery Respondents filed and/or served objections to these subpoenas. (DE# 6; DE# 18; DE# 25.)[9]  On November 29, 2010, Carlton Fields, P.A. and Robert Macaulay (the "Carlton Fields Respondents") served their Objections to Subpoenas Duces Tecum dated November 8, 2010.  (DE# 25.)  In their objections, the Carlton Fields Respondents objected on the bases of confidentiality, undue burden, overbreadth, relevancy, the attorney-client privilege and the work-product doctrine.  Macaulay and Slosbergas also moved for protective orders preventing their depositions, but the Court denied these requests.  Thereafter Rural Bahamas filed an Emergency Motion for Protective Order Postponing Luisa Binder's Deposition, which the Court denied on January 7, 2011.  (DE# 34; DE# 39.)

Macaulay and Slosbergas's depositions proceeded on December 9, 2010, and December 16, 2010, respectively.  The deposition of Luisa Rosa de Oliveira Binder proceeded as scheduled on January 11, 2011.  Despite having had its motion denied, Rural Bahamas utilized the opportunity to appear at all three depositions, where its counsel interposed objections and asserted various privileges.  Rural Bahamas' counsel even instructed the witnesses not to answer certain questions during the depositions.  (Hr'g Tr., DE# 84, pp. 53:16-25; 54:1-8.)[10]

---

[9]    AT&T initially did not object to the subpoena served upon it but.  However, when Federico Jenkins, whose phone records that subpoena sought filed a motion to quash the AT&T subpoena, AT&T informed Dr. Braga's counsel that it would not produce responsive documents until resolution of Mr. Jenkins' motion by the Court. Jenkins motion was eventually resolved by a stipulated court order and is no longer pending.  (DE# 66; DE# 67.)

[10]    Dr. Braga filed a Motion to Compel Production of Documents by the Carlton Fields Respondents on January 3, 2011.  (DE# 32.)  The Carlton Fields Respondents subsequently produced approximately forty pages of documents to Dr. Braga without a privilege log.  (DE# 84, p. at 148:12-25.)  A "Privileged Category Document Log" was later filed by the Carlton Fields Respondents on January 27, 2011, as an exhibit to their Response in Opposition to Dr. Braga's Motion to Compel Production of Documents.  (DE# 65-2.)  The Motion to Compel Production of Documents (DE# 32) and a separate Amended Motion to Compel Robert B. Macaulay to Provide Further and Better Deposition Responses (DE# 51) were also heard at the hearing on February 17, 2011, and the Court reserved ruling on those motions.

### *Rural Bahamas' Request for a Stay*

Rural Bahamas' Motion initially sought a stay of discovery "until after the Court rules upon Proposed Intervenors' challenges to the discovery application."  (DE# 15, p. 19.)  Over time, this request by Rural Bahamas evolved into a request to stay any and all discovery except as to Petroforte, the Sobar transaction, and the deceased owner of Petroforte, Mr. Natalino, until such time as certain Cayman Islands **and** Brazilian court proceedings are resolved.  At the February 17, 2011, hearing, counsel for Rural Bahamas articulated his client's new request: "I think the logical solution for the Court here is to await the outcome of that appeal, which is going on in the STJ[11] right now in Brazil."  (DE# 84, at p. 26:8-10.)

Rural Bahamas argued that this Court also should stay discovery pending the resolution by a Caymanian court of two related applications pending before it, one involving intervenors Arnage Holdings Limited and Brooklands Holdings Limited, and the second involving an application for directions filed by the Carlton Fields Respondents pursuant to § 4 of the Cayman Confidential Relationships Preservation Law ("CRPL"):

> While we have this dispute between the parties about whether or not he can do that, the wise thing to do is to let that be resolved in Brazil.  Same thing with the Cayman Islands.  We won't have a Cayman Islands objection if the Grand Court of the Cayman Islands says we won't.
> . . .
> We talked about the stay.  I think we covered that at length, Judge. We also think the appropriate judicial decision here would be to let those Courts in the other countries make their decisions instead of you having to delve into the law of those countries … We also have in the Cayman Islands the equally disputed question of whether the trustee improperly secured the release of documents, confidential documents protected by Cayman Islands law.  That will be decided in a two-day hearing in April.  We also have a direct conflict on the scope of the confidential relationships preservation law of the Cayman Islands and to what extent it

---

[11]     Brazilian Superior Court of Justice.

allows witnesses and prevents witnesses from answering questions and producing documents.  That will be resolved as well by the Grand Court of the Cayman Islands at the same time.

(DE# 84, at pp. at 36:4-9, 50:9-13; 51:1-11.)

### *Dr. Braga's Opposition to the Stay and Rural's Reply and Counter-Argument*

Dr. Braga opposed the stay as defined by Rural Bahamas in its Motion, noting that "Rural does not claim that it will suffer 'a clear case of hardship or inequity' if the case proceeds." (DE#, p. 30, p. 12.)  Dr. Braga also argued that Rural Bahamas has not contended that a stay would be harmless to the Petroforte estate under his administration and, in fact, could not do so. Dr. Braga states this is because "the Brazilian court already specifically found in paragraph 49(a) of its Letters Rogatory directed to this Court, [that] there is a real danger of asset flight in this case.  That risk is an independent and serious reason to avoid delay in the discovery which has been ordered."  (*Id.* At p. 13.)  Moreover, Dr. Braga seeks access to all the facts regarding Securinvest's ownership after September 22, 2009, so that the STJ may have a complete and accurate picture of the relevant events.  Dr. Braga contends that a stay in Miami to allow the STJ to rule on the merits first will substantially moot his ability to achieve this objective.

Dr. Braga's counsel reiterated these points at the February 17, 2011 hearing, emphasizing the prejudice associated with delay, the unknown duration of the Brazilian and Caymanian proceedings, including potential appeals, and the harm to the Petroforte estate and its creditors. (DE# 84, pp. 76:11-25, 88-90, 91:1-23.)  Dr. Braga took the position that this Court should give special credence to the Brazilian Bankruptcy Court's two letters rogatory, the first dated July 12, 2010, and incorporated in the Application, and the second dated December 28, 2010, as evidence affirming the need for and legality of the discovery sought in this District.  These letters, Dr. Braga argued, demonstrate that the bankruptcy suspension order entered by the STJ in no way

12

diminishes his authority to seek the discovery sought in this proceeding.  (*Id.* at p. 122:3-7.)
Finally, Dr. Braga urged that this Court need not and should not resolve questions of foreign law
in the context of an application for discovery under 28 U.S.C. § 1782.  (*Id.* at pp. 111:9-13;
118:14-19; 121:14-17; 124:13-25; 125:1-2.)  Moreover, Dr. Braga alternatively argued that the
CRPL is not a barrier to the discovery sought because, under its own terms, that law does not bar
production of otherwise confidential information if it is made in accordance with American law,
and even if that exception does not apply, this Court is simply not bound by Caymanian law if it
believes the discovery should go forward.  (*Id.* at pp. 164:17-25; 165-169:1-18; 180-181:1-7.

### III.   <u>ANALYSIS</u>

As already discussed, this motion (and the entire "case" pending in this district) arose
from a request from a Brazilian bankruptcy trustee to allow certain discovery in the United States
in connection with a Brazilian bankruptcy proceeding.  Specifically, the applicant, Dr. Afonso
Braga, availed himself of  28 U.S.C. § 1782 and sought and obtained an *ex parte* order
permitting the issuance of certain subpoenas.  [D.E. 1].  There is nothing inappropriate about an
*ex parte* application under this statute.  In fact, in the Court's experience, most applications filed
here in this district are submitted on an *ex parte* basis.

The general proposition that a foreign litigant can use 28 U.S.C. § 1782 to seek
information in the United States for use in a foreign proceeding is not a controversial one.  But
this case has a long and complex history. **This** Court (which admittedly is not an expert in
Brazilian law, Brazilian bankruptcy law or Cayman Islands law) has been asked to make rulings
that could affect the posture and perhaps even the outcome of bankruptcy proceedings in Brazil
where hundreds of millions of dollars are at stake.  Further, the Court's ruling could have a
substantial impact in Brazil on collateral issues unrelated to the subject bankruptcy.   The Court

is thus inclined to tread very carefully – and is extremely reluctant to start issuing proclamations about foreign law, especially when the parties have submitted competing declarations and affidavits from Brazilian law experts.[12]  Before setting out its ruling on the motion, however, it is appropriate to clarify on the record the status of the proceedings in *this* forum.

**The Motions to Intervene**

After Dr. Braga's *ex parte* application was granted [D.E. 3], Rural Bahamas sought to intervene on its own behalf and also to raise the rights of its affiliates and certain others [D.E. 15].  Following a February 17, 2011 hearing, the Court entered an order granting Rural Bahamas' motion to intervene but stating that any other entities or individuals should move to intervene themselves or join in Rural Bahamas' motions [D.E. 80].

On February 25, 2011, three motions to intervene were filed.  [D.E. 85-87].  One included Banco Rural, S.A., Rural Leasing, S.A., Katia Rabello, Sabino Correa Rabello, and Junha Rabello [D.E. 85].  A second was made by Securinvest Holdings, S.A., Arnage Holdings Limited, and Brooklands Holding Limited [D.E. 86].  A third was filed by Trade Link Bank and Fernando Toledo [D.E. 87].  Each of these motions to intervene adopted and joined in Rural Bahamas' arguments.  The same day, the Court granted the motions to intervene as to  Banco Rural, S.A., Rural Leasing, S.A., Katia Rabello on her individual behalf, Securinvest Holdings, S.A., Arnage Holdings Limited, and Brooklands Holdings Limited "to the same extent [the Court] granted Rural International's motion to intervene."  [D.E. 88].[13]  The Court reserved

---

[12]      Because the parties have, in effect, urged this Court to make determinations about Brazilian bankruptcy and Cayman Islands law, the Court is reminded of Mark Twain's wise words: "It is better to keep your mouth closed and let people think you are a fool than to open it and remove all doubt."  http://www.quotatonspage.com/search.php3?homesearch=fool  (last visited March 15, 2011).

[13]      Rural International and Rural Bahamas refer to the same entity.

ruling on the motions to intervene of Trade Link Bank, Fernando Toledo, the late Sabino Correa Rabello, and the late Junha Rabello. *Id.*

While the initial Motion to Intervene and to Stay Discovery [D.E. 15] requested a stay pending resolution of the motion to intervene, this position has evolved and, as explained earlier in this Order, the Court is now asked to stay certain discovery pending the resolution of an appeal in the Brazilian bankruptcy case and an application for directions to the Grand Court of the Cayman Islands. Transcript of Hearing, February 17, 2011 ("T.") at 36; *see also, e.g.*, Rural International's Reply Mem. in Supp. of its Mot. to Quash or Modify Subpoenas at 6 [D.E. 76]; Rural International's Reply in Supp. of its Mot. to Vacate or Amend Final J. at 9-10 [D.E. 77].

As outlined above in summary fashion and as explained below in more detail, the issues raised by the objections to the application and the subpoenas are sufficiently intertwined with and dependent on matters pending in Brazil and in the Cayman Islands that the Court should refrain at this time from addressing those objections.

## The Importance of Relevance to the Brazilian
## Bankruptcy Case and of Foreign Proof Gathering Restrictions

Any decision relating to a 28 U.S.C. § 1782 application must consider the factors delineated by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 541 U.S. 242 (2004). The four factors are (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," (2) "the character of the proceedings underway abroad," (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions

or other policies," and (4) whether the request is "unduly burdensome and intrusive."  *Id*. at 264-65.[14]

The Eleventh Circuit, in a post-*Intel* case*,* has held that a § 1782 applicant is only entitled to discovery that is relevant to the foreign proceeding.  *See Kang v. Noro-Moseley Partners*, 246 Fed. Appx. 662, 664 (11th Cir. 2007) (affirming order quashing subpoena due to "irrelevance of the requested discovery to the nature of the foreign proceedings")[15]; *see also Intel*, 542 U.S. at 262 (stating that the purpose of ordering discovery under 28 U.S.C. § 1782 is to "assist foreign tribunals in obtaining *relevant* information") (emphasis added).  Also, per *Intel*, whether Dr. Braga's application "conceals an attempt to circumvent foreign proof-gathering restrictions" is directly germane to the instant motion.

While Dr. Braga has recently agreed to modify the scope of his subpoenas, the Intervenors argue that he still seeks broad-ranging discovery relating to them and various other independent entities and individuals in Brazil, the United States, and the Cayman Islands.[16]

---

[14]    Dr. Braga's post-hearing proposed order on the motion to stay did not analyze the four *Intel* factors. (DE# 91-1).

[15]    This September 4, 2007 opinion states that it is not for publication in West's Federal Reporter.  But Fed. R. App. Pro. 32.1(a) provides that a court may not prohibit or restrict the citation of federal judicial opinions issued on or after January 1, 2007 that have been designated as "unpublished," "not for publication," "non-precedential," "not precedent" or the like.

[16]    Dr. Braga has withdrawn Paragraph 1 of his subpoenas, which required the production of any and all documents in the possession, custody or control of witnesses "pertaining to or relating to anyone or more of the following" 61 persons and entities.  Paragraph 2, which remains, requires production of any and all documents "pertaining to or relating to the subject matter of the 28 U.S.C. § 1782 Application," "including but not limited to, documents pertaining to or relating to" particular corporate services in the Cayman Islands and the ownership and assets of any of the same 61 persons or entities.  *See, e.g.,* D.E. 1-5.

## The Challenge Facing the Court

In addition to the stay motion, four other related motions have been filed with the Court: the Intervenors' motion to quash or modify the subpoenas issued pursuant to Dr. Braga's § 1782 application [D.E. 27-1]; the Intervenors' motion to vacate or amend final judgment [D.E. 53]; Dr. Braga's motion to compel Carlton Fields and Robert Macaulay to provide documents [D.E. 32]; and Dr. Braga's motion to compel better answers to deposition questions propounded to Mr. Macaulay [D.E. 44].   In the briefing and oral argument on those motions, the Court is confronted with widely different interpretations of the law of Brazil and of the Cayman Islands, with both sides' arguments supported by the affidavits and declarations, all facially credible, of noted practitioners and scholars.

Brazilian Law Conflicts.  Concerning Brazilian law, the Court has been provided with legal opinions on the effect of a suspension of the Brazilian bankruptcy as to Securinvest, the characteristics of a common economic group in Brazilian bankruptcy law, whether discovery from Rural Group affiliates such as Katia Rabello is permissible in light of the Securinvest suspension, and various other matters such as the exclusionary doctrine applicable in Brazilian civil cases and the right to privacy under the Brazilian constitution.

The Intervenors and Dr. Braga vigorously disagree on the effect of the order suspending the Petroforte Group bankruptcy's extension to Securinvest, which was entered by Brazil's highest non-constitutional appellate court, the Superior Court of Justice or STJ.  De Vasconcellos Decl., Exhibit D [D.E. 27-4].  The Intervenors maintain that it is a stay based on the absence of evidence that Securinvest is part of the same economic group as Petroforte, which eliminated Dr. Braga's powers relating to Securinvest, including the right to take discovery.  *Id., ¶¶* 29-31 [D.E. 27-2]; Araujo Decl., ¶¶ 23-31 [D.E. 76-1]; Tavares Decl., ¶¶ 12-14 [D.E. 27-5].  Dr. Braga

argues that the suspension limits only his ability to liquidate Securinvest's assets, but not his control of Securinvest and his investigatory powers as they relate to the present application because, he contends, Securinvest remains a part of the bankruptcy estate.  T. 10-11; Braga Opp. Mot. Quash at 12 [D.E. 70].

Moreover, although both the Intervenors and Dr. Braga agree that an entity must be shown to be part of the same economic group as the debtor in order to be brought into a Brazilian bankruptcy case, *see* Dr. Braga's Application at 6 [D.E. 1] *and* Rural International's Reply Mem. in Supp. of Its Mot. to Quash at 2 [D.E. 77], they **disagree** to some extent on what must be shown to establish that commonality.

The Intervenors maintain that to have a common economic group, there must be common ownership and management, as well as a showing that the entities in that relationship were formed to defraud the debtor's creditors.  *See, e.g.,* Vasconcellos Decl., ¶ 16 [D.E. 27-2]; Araujo Decl., ¶¶ 39-41 [D.E. 76-1].   Dr. Braga's position is somewhat but perhaps not materially different, agreeing at least in the abstract that "a party, through an ex parte bankruptcy extension application, cannot be made a party to a bankruptcy unless it first is demonstrated that there is a 'common economic group,' patrimonial confusion of assets, or abuse of the corporate form, shown through, for example, common ownership, common control, or collusion in engaging in wrongful conduct…"  Braga Opp. Mot. Quash at 12 [D.E. 70].

It is also of record in this matter that the Petroforte bankruptcy has been extended to Katia Rabello, the majority shareholder of Banco Rural.  De Moraes Decl., ¶ 5 [D.E. 76-2]. Dr. Braga asserts that Katia Rabello is the ultimate beneficial owner of Securinvest.  Dr. Braga's Application at 13-15 [D.E. 1].  The Intervenors contend that since this is the only alleged basis for adding her to the Brazilian bankruptcy, and that since the bankruptcy has been suspended as

to Securinvest, it is inevitable and appropriate that it be stayed as to her as well.  De Moraes Decl., ¶ 5 [D.E. 76-2].  The extension of the bankruptcy to Katia Rabello is **also on appeal in Brazil.**  *Id*.

       <u>Cayman Islands Conflicts.</u>  The parties vigorously about whether Dr. Braga acted improperly in the Cayman Islands when he obtained two *ex parte* orders under the *Norwich Pharmacal* doctrine applicable in British practice.  *See Norwich Pharmacal Co. & Others v. Customs and Excise Comm'rs* [1974] AC 133 (Eng).  These orders released to him information on Securinvest's shareholders which was otherwise confidential under the law of the Cayman Islands.  Whether Dr. Braga obtained this information in an improper or illegal (or otherwise improper way) controls its admissibility.

       According to Rural Bahamas, Brazil has adopted the American "fruit of the poisonous tree" exclusionary rule set out in, e.g., *Wong Sun v. United States*, 371 U.S. 471 (1963), in civil and criminal cases.  The parties appear to agree on this.  T. 107, 125; Campos Decl., ¶ 10 [D.E. 74-2]; de Moraes Decl., ¶ 10 [D.E.# 76-2].

       Thus, if the origin of the data from the Cayman Islands is ruled to have been contrary to Cayman Islands law, then the Court's understanding is that the information will be inadmissible in Brazil.  T. 106.  Intervenors argue that it is Dr. Braga's desire to avoid this potential inadmissibility which is responsible for  his efforts to procure the same information from Securinvest's Miami counsel.  According to Intervenors, Dr. Braga's motivation is to permit him to argue that the Miami information was admissible because it was not tainted by any illegality or impropriety in the Cayman Islands.

       The question of whether information obtained in the Cayman Islands would be inadmissible in Brazil goes to both the issue of relevance and of preventing attempts to avoid

foreign limits to discovery by seeking § 1782 discovery.  Both of these issues are considerations which *Intel* requires be taken into account.

Additionally, the parties present the question of whether the Cayman Islands Relationships (Preservation) Law limits the degree of disclosure about Cayman Islands entities which Carlton Fields and Mr. Macaulay may make in the United States without violating the Cayman law. Carlton Fields and Mr. Macaulay have sought directions from the Grand Court of the Cayman Islands on this point, and they have **predicted** that the application can be expected to be heard this April (after the hearing to determine whether or not Dr. Braga violated Cayman Islands law when applying for the disclosure orders).  Mr. Macaulay's Resp. to Am. Mot. to Compel at 14-15 [D.E.# 68].[17]

Although the court is not required to evaluate whether discovery requests in a § 1782 application "comply with the foreign country's discovery laws," the court "must" consider whether "the litigant's motives are tainted by a surreptitious effort to bypass foreign discovery rules." *Kulzer v. Eschem, Inc.,* 2010 WL 2977459 at *4 (3rd Cir. 2010).[18]

This Court recognizes that the statute does not expressly reference a requirement of discoverability under Brazil's laws, but it also understands that it may consider whether the discovery he seeks is relevant to the Brazilian bankruptcy case and should assess whether, in

---

[17]    The Court recognizes that a favorable (to Intervenors) ruling from the Cayman Islands Court and authorities might not completely resolve the discovery issues, as this Court might still need to determine if the discovery sought here from Carlton Fields and Mr. Macaulay should be allowed in any event.  *In re Grand Jury Proceedings the Bank of Nova Scotia*, 740 F.2d 817 (11th Cir. 1984) (compelling discovery notwithstanding Cayman Island business secrecy laws); *In re Grand Jury Proceedings. United States v. Field*, 532 F.2d 404 (5th Cir. 1976) (requiring testimony notwithstanding Cayman Island penal statute purportedly preventing disclosure of information sought), *cert. denied,* 429 U.S. 940 (1976); *In re Grand Jury Proceedings v. Bank of Nova Scotia*, 691 F.2d 1384 (11th Cir. 1982) (same, in the context of Bahamian secrecy laws).

[18]    This is another "not selected for publication" opinion which may still be cited.

seeking it, he is attempting to evade Brazilian evidentiary limitations and whether he illegally or unlawfully obtained court orders in the Cayman Islands.

This Court *could* now decide these factually complicated and legally complex issues of foreign law, but there is considerable risk that in doing so -- based necessarily on limited presentations of the jurisprudence of other countries -- error will result.  Accordingly, the Court concludes that it is preferable to permit the foreign jurisdictions to decide these thorny issues and to authorize a limited stay if authorized by law and not unreasonable in length.  *See Lake Airways Ltd. v. Sabena, Belgian World Airlines* 731 F.2d 909, 939 n.110 (6th Cir. 1984) (noting that a district court need not resolve an unsettled question of foreign law because "the district court would have discretion to stay the action pending a special proceeding in the foreign court brought for the limited purpose of resolving that issue") (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 389-91 (1974)).

### The Court's General Authority On a Motion to Stay

It is well-established that a district court has the authority to stay proceedings on its own motion or on motion of the parties.  *See, e.g., Landis v. North Am. Water Works and Elec. Co.*, 299 U.S. 248, 254 (1936) (noting that federal courts have inherent authority to stay proceedings to conserve judicial resources and ensure that each matter is handled efficiently); *Ortega Trujillo v. Conover & Co. Commc'ns, Inc.*, 221 F.3d 1262, 1264 (11th Cir. 2000) (evaluating district court's *sua sponte* stay of proceedings pending resolution of a related foreign matter for abuse of discretion); *Government of the Virgin Islands v. Neadle*, 861 F. Supp. 1054, 1055 (M.D. Fla. 1994) ("a district court has discretion to stay an action which duplicates one pending in another federal district court."); *Republic of Venezuela v. Philip Morris Cos., Inc.*, No. 99-0586-Civ, 1999 WL 33911677, *1 (S.D. Fla. April 28, 1999) (district court's discretion to stay its

proceedings "is derived from and incidental to a court's inherent power to control the disposition of cases on its docket and ensure a 'fair and efficient' adjudication of matters").

The broad authority to grant a stay extends to 28 U.S.C. § 1782 proceedings. *See In re Merck & Co., Inc.*, 197 F.R.D. 267, 271 (M.D.N.C. 2000) (staying ruling on *ex parte* § 1782 application pending notification to all interested parties of their right to file a formal response); *In re Imanagement Services Ltd.*, No. Misc. 05-89(FB), 2005 WL 1959702, *1 (E.D.N.Y. Aug. 16, 2005) (noting that discovery had been stayed "pending briefing and oral argument" on objections to application for discovery pursuant to 28 U.S.C. § 1782).

### A Stay Is Particularly Appropriate Where the United States Court
### Is Awaiting A Potentially Dispositive Ruling from A Foreign Court

As explained by the Eleventh Circuit, "a variety of circumstances may justify a district court stay pending resolution of a related case in [a foreign] court. A stay sometimes is authorized simply as a means of controlling the district court's docket and of managing cases before the district court. And, in some cases, a stay might be authorized also by principles of abstention." *Ortega Trujillo, 221 F.3d at 1264 (internal citations omitted).*

Courts in this circuit apply international abstention principles to determine the propriety of a stay pending resolution of related foreign litigation. *See Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1522 (11th Cir. 1994) (staying United States litigation based on international abstention analysis until German court ruled on appeal and foreign litigation was complete); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 719-20 (1996) ("[W]e have applied abstention principles to actions 'at law' only to permit a federal court to enter a stay order that *postpones* adjudication of the dispute, not to dismiss the federal suit altogether."); *King*, 505 F.3d at 1172-73 (vacating indefinite stay); *Cf. Ortega Trujillo*, 221 F.3d at 1264

(vacating indefinite stay where district court failed to examine all of the international abstention factors).

Thus, the relevant considerations for determining whether to impose a stay are: (1) international comity; (2) fairness to litigants; and (3) judicial efficiency. *Turner Entm't Co.*, 25 F.3d at 1518.

**International Comity**

International comity factors, as applied to the recognition of parallel foreign decisions, include: (1) whether the judgment was a result of fraud; (2) whether the foreign court proceedings are consistent with American notions of due process; (3) whether the foreign judgment violates American public policy; and (4) the relative strengths of the American and international interests in the matter. *Turner Entm't Co.*, 25 F.3d at 1519, 1521. The Intervenors do not contend that any of the relevant foreign decisions are fraudulent, that judgments will be rendered by foreign courts acting inconsistently with American notions of due process, or that any of the decisions are or will be repugnant to American public policy. Therefore, the international comity factor turns on the strength of the American interests in achieving the twin aims of 28 U.S.C. § 1782: namely, providing efficient means of assistance to participants in international litigation and encouraging foreign countries by example to provide reciprocal means of assistance to our Courts, balanced against the Brazilian interest in the Petroforte bankruptcy and the Brazilian and Cayman Islands' interests in the enforcement of their own laws. *See Application Pursuant to 28 U.S.C. § 1782 for an Order Permitting Christen Sveaas to Take Discovery*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008); T. 123.

The Court finds it significant that the STJ has chosen to exercise its discretion to take jurisdiction over Securinvest's appeal on the issue of whether it is part of the same economic

group as Petroforte.  *See* De Moraes Decl., ¶ 4  [D.E. 76-2].  Moreover, in the Cayman Islands proceeding Dr. Braga recently and voluntarily agreed to abide by certain restrictions on his use of documents relating to Securinvest secured from his ex parte applications there pending the outcome of further hearing in the Cayman Islands.  (DE# 123, p. 5; DE# 126, p. 4.).  In effect, the Cayman Islands' interests in this action are subsumed within the Brazilian interests, and it seems logical that those Brazilian interests far outweigh the nebulous risk of harm to future United States requests for judicial assistance from Brazil.

### Fairness to Litigants

Fairness considerations include: (1) the order in which the suits were filed; (2) the convenience of the forums; and (3) the possibility of prejudice in the foreign forum to the party opposing the stay.  *Turner Entm't Co.*, 25 F.3d at 1522.  The Petroforte Group bankruptcy proceeding was initiated in 2003.  Dr. Braga's Application at 4 [D.E. 1]; de Vasconcellos Decl., ¶ 18 [D.E. 27-2].   However, with regard to the present discovery proceedings, the parallel foreign proceedings are the appeal on the merits of the extension of the bankruptcy proceedings to Securinvest -- i.e., the determination of whether or not Securinvest and Petroforte are in a common economic group -- and the two applications before the Cayman Islands courts. The first Cayman Island application addresses the issue of whether the *Norwich Pharmacal* disclosure orders should be set aside and injunctive relief ordered, and the second issue is one for directions regarding the applicability of the Confidential Relationships (Preservation) Law.  Macaulay's Resp. to Am. Mot. to Compel at 14-15 &  Ex. A [D.E. 68].  The bankruptcy extension appeal predates the filing of the instant Application by Dr. Braga, while the pending Cayman Islands applications are a direct result of, and subsequent to, the commencement of these proceedings. *Id.*  The order in which the suits were filed is not dispositive of this factor.  *See Belize Telecom,*

24

*Ltd. v. Government of Belize*, 528 F.3d 1298, 1308 (11th Cir. 2008) (finding stay was fair to party opposing it, where that party initiated the foreign litigation, even though the order in which the suits were filed weighed in favor of the American forum).

Where foreign interests in the matter outweigh any American interests, as is the case here, it logically follows that the foreign forum is also more convenient. *See id.* As explained above, the United States' interest in promoting the twin aims of 28 U.S.C. § 1782 are outweighed by the Brazilian concern with the proper administration of its bankruptcy proceedings and the proper enforcement of its laws. Brazil's interest also takes into account the Cayman Islands' interest in ensuring that there has not been an abuse of process with respect to the Cayman Islands' disclosure orders, and protecting the privacy of companies organized to do business there and their reasonable expectations that its confidentiality statutes will be enforced.

Similarly, because Dr. Braga initiated the litigation in Brazil, the Court concludes that it is likely that he will receive fair and impartial appellate consideration there on the threshold issue of Securinvest's inclusion in the Petroforte bankruptcy estate, on which the relevance of the requested discovery turns. *See id.* (noting that party opposing application of abstention doctrine initiated the foreign litigation and concluding as a result that it had "received a fair and impartial trial").

### Judicial Efficiency

Judicial efficiency considerations include: (1) the inconvenience of the American forum; (2) the desirability of avoiding piecemeal litigation; (3) commonality of parties and issues; and (4) whether the alternative forum is likely to render a prompt disposition. *Turner Entm't Co.*, 25 F.3d at 1522. Where the interests of the foreign country outweigh the American interests in the

pending litigation, it leads to the conclusion that the foreign forum is more convenient than the American forum.  *See Belize Telecom, Ltd.*, 528 F.3d at 1308.

More importantly, however, barring other procedural limitations, a request for stay should be granted where the decision in a foreign proceeding is "likely to have a substantial or controlling effect on the claims and issues in the stayed case."  *See Miccosukee Tribe of Indians of Fla. v. South Fla. Water Mgmt. Dist.*, 559 F.3d 1191, 1198 (11th Cir. 2009) (dismissing appeal of district court's stay order for lack of jurisdiction but noting that "the reason for the district court's stay was at least a good one, if not an excellent one" where decision in other proceeding was "likely to have a substantial or controlling effect on the claims and issues in the stayed case").

Dr. Braga and the Intervenors are thoroughly at odds on the effect of the relevant Brazilian legal principles.  Each side has presented opinions from an impressive roster of experts on Brazilian law.  Basically, Dr. Braga contends that the Securinvest suspension does not prevent him from taking discovery and the Intervenors, including Katia Rabello, contend that it does preclude him from proceeding.

Intervenors have already conceded that their principal objections would be nullified by rulings in favor of Dr. Braga in both the Cayman Islands proceedings and the Brazilian appeal proceedings.  T. 36.  Therefore, a ruling in the Brazilian appeal will resolve the question of whether Dr. Braga has the right to the discovery requested pursuant to the Application.

According to the Intervenors, a final decision on both the merits appeal and the provisional issue concerning the stay is *expected* by the end of June.  T. 31.  Assuming that this prediction proves correct, the Cayman Islands court presumably will have resolved the challenge to the *Norwich Pharmacal* orders by that time, and Carlton Fields' and Mr. Macaulay's

application for directions from the Cayman Islands Court under the Cayman Islands Confidential Relationships (Preservation) Law will have resulted in clear directions on the scope of that statute which will assist this Court.

However, the Intervenors may well be wrong about the timing of the Brazilian appeal decision and the expected rulings or opinions from the Cayman Islands. Therefore, the Court believes that only a *limited* stay should be entered at this time. *See Ortega Trujillo*, 221 F.3d at 1265 (vacating stay that was indefinite because "stay appear[ed] to expire only after a trial of the Bahamian case and exhaustion of appeals in that case" and "the record indicate[d] that the Bahamian case [was] not progressing quickly").

The Court notes parenthetically that the Intervenors have not objected to discovery by Dr. Braga regarding Petroforte Group assets and a Brazilian transaction concerning an ethanol plant called SOBAR.

## IV.   CONCLUSIONS

Accordingly, after considering all of the evidence and weighing the equities, the Court finds that a limited stay of discovery relating to the Intervenors is warranted, and it is **ORDERED and ADJUDGED** that the Motion to Stay Discovery is **GRANTED IN PART and DENIED IN PART,** as follows:

1.   Responses to Dr. Braga's subpoenas seeking information relating to Securinvest, its affiliates, and other parties related to Securinvest --  including but not limited to Katia Rabello -- are hereby **stayed**.  However, Dr. Braga may continue to pursue discovery on Petroforte Group assets and the SOBAR transaction.

2.  Barring a ruling from the Brazilian STJ as to whether Securinvest is part of a common economic group with Petroforte and rulings from the Cayman Islands on the two issues pending there, this stay shall remain in place until **June 30, 2011**.

3.  Dr. Braga my pursue discovery on all topics listed in the subpoenas **other than those** at issue in the Brazilian appeal concerning Securinvest, the Cayman Islands proceedings (concerning the propriety of Dr. Braga's actions there and the request (by the Carlton Fields firm and Mr. Macaulay) for guidance) and the topics removed (at least temporarily) by Dr. Braga's agreement to narrow the scope of the subpoenas.

3.  To the extent no order from the Brazilian STJ or the Cayman Islands is rendered by June 30, 2011, then the stay shall automatically **expire**, without further order from the Court, at the end of business on June 30, 2011 and Dr. Braga may pursue the discovery which had been placed on hold due to the temporary stay.  Parties obligated to respond to discovery would still be permitted to interpose legally supportable specific objections, however, such as the attorney-client privilege.  In other words, the expiration of the stay would not affect the ability of a party served with discovery to properly interpose objections or seek protection from the Court on a category-by-category basis.

4.  Any party may apply to this Court to lift, extend or modify the stay within 30 days of the entry of an order from an international tribunal (i.e., in Brazil or the Cayman Islands) which the moving party believes provides ground for such relief

**DONE AND ORDERED** in Chambers at Miami, Florida this 18th day of May, 2011.

_____

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**

Honorable James Lawrence King

All counsel of record (via CM/ECF)

29